UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SHERRY PYSCHER,

        Plaintiff,

                                                        Case Number 06-10637-BC

v.                                             Honorable Thomas L. Ludington

MOUNT PLEASANT PUBLIC SCHOOLS SYSTEM,
THOMAS ARMSTRONG, GARY ALLEN,

        Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On February 13, 2006, Plaintiff Sherry Pyscher filed suit against Defendant Mount Pleasant Public Schools System (MPPSS), Defendant Gary Allen, its superintendent, and Defendant Thomas Armstrong, its business manager. She alleges a violation of 42 U.S.C. § 1983 based on purported violations of her First Amendment rights and her Fourteenth Amendment equal protection rights, and a violation of the Michigan Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101 *et seq.*, based either on sexual harassment or retaliation for reporting harassment. Defendants seek summary judgment under Federal Rule of Civil Procedure 56(c).

Plaintiff worked as a receptionist and telephone operator for Defendant MPPSS. She reported to Defendant Armstrong, as her supervisor for some of her responsibilities.

Plaintiff alleges that Defendant Armstrong would always use the bathroom, a room adjacent to where she sorted the mail, when she attended to that duty. She states that the walls are thin, so sound travels unimpeded between the rooms. She also maintains that Defendant Armstrong would leave stool and urine on the toilet seat and that she had to clean up after him. She asserts that the bathroom situation improved for a time after she complained, and the bathrooms were then specified

for each gender. That practice ceased after the transition to a new assistant superintendent, but Plaintiff states that she complained again.

She further maintains that Defendant would brush against her breasts when he passed her in a narrow hallway. Plaintiff also stated that, when she entered his office, Defendant Armstrong would turn in his chair to face her and then lunge, scooting his pelvis down the chair and directing himself toward her.

Once, on about October 23, 2002, according to Plaintiff, Defendant Armstrong called her into his office, shut the door, and came very close to Plaintiff without touching her. After overhearing a comment that she made to a female co-worker (who had recently had a breast reduction surgery), he asked what she had that was bigger than what the co-worker had.[1] Defendant Armstrong denies that this situation occurred.

After that incident, Plaintiff reported all these allegations against Defendant Armstrong to Defendant Allen. Plaintiff recounts that Defendant Allen expressed displeasure at her for raising these concerns. Shortly after that, Defendant Allen announced that Defendant Armstrong would be terminated, effective June 2003. Instead, Defendant Armstrong left his position with Defendant MPPSS on January 28, 2003. Five days later, on February 4, 2003, Plaintiff was informed that she was being laid off. Plaintiff then announced her intention to "bump" another employee, a process available under her union's collective bargaining agreement that allows employees with more seniority who face a lay-off to take the position of a more junior employee in the same job classification. Defendant MPPSS rescinded her lay-off in a letter dated February 21, 2003. Plaintiff's position was then re-categorized as a new job classification shared by no one else. On

---

[1]Plaintiff explains the conversation with her co-worker as describing pairs of glasses.

May 27, 2003, she was again laid off, but this time her new classification eliminated the possibility of "bumping" another employee.

Regarding Plaintiff's claim of a violation of 42 U.S.C. § 1983 based on an alleged violation of her First Amendment rights, she must show that "(1) [she] engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against [her] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by [her] protected conduct." *Scarbrough v. Morgan County Bd. of Education*, 470 F.3d 250, 255 (6th Cir. 2006) (citation omitted).

In considering the first element, a court must evaluate whether an employee's speech "may be fairly characterized as constituting speech on a matter of public concern." *Rose v. Stephens*, 291 F.3d 917, 920 (6th Cir. 2002) (citation and internal quotations omitted). In *Connick v. Meyers*, 461 U.S. 138, 148 (1983), the Supreme Court concluded that an employee's speech was not protected speech, in part, because the employee made no attempt to bring her allegations against her employer to the public, instead circulating them only internally. *See also Langford v. Lane*, 921 F.2d 677, 681-683 (6th Cir. 1991) (not extending constitutional protection to an employee's refusal to speak to her supervisor about a matter of public concern while at the workplace, though later discussion of the same issue at a public hearing did warrant constitutional protection). Thus, although claims of sexual harassment are inherently matters of public concern, *see e.g., Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 168 (6th Cir. 2004) (citations omitted), the analysis does not focus exclusively on the content of speech. Rather, "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as

revealed by the whole record." *Matulin v. Lodi*, 862 F.2d 609, 612 (6th Cir. 1988) (citation and internal quotations omitted).  If necessary, a court must apply the balancing test of *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1968), "to determine if the employee's free speech interests outweigh the efficiency interests of the government as an employer." *Jackson v. Leighton*, 168 F.3d 903, 911 (6th Cir. 1999) (citation omitted).

Here, Plaintiff has not indicated any speech beyond the act of alerting Defendant Allen and, thus, her employer, Defendant MPPSS, of her concerns about sexual harassment in the workplace. Although a complaint of sexual harassment is unquestionably a matter of public concern, the context of Plaintiff's speech is not that of a person raising a public concern.  She never addressed this point to the public, nor has she offered any evidence to suggest that she broadcast her allegations beyond her workplace or her home.  The topic of her report to her employer, requesting corrective action, does not convert her report to a matter of public concern or into a public communication. Accordingly, even viewing the evidence in a light most favorable to Plaintiff and drawing all inferences in her favor, no genuine issue of material fact remains and Defendant is entitled to judgment as a matter of law, because the context and form of Plaintiff's statements show that she did not engage in constitutionally protected speech.

Regarding Plaintiff's claim of a violation of 42 U.S.C. § 1983 based on alleged violations of her Fourteenth Amendment equal protection rights, Plaintiff insists that the equal protection clause establishes a constitutional right of freedom from sexual harassment from a supervisor, separate and independent from any statutory claim. *See Ebelt v. County of Ogemaw*, 231 F. Supp. 2d 563, 569-570 (E.D. Mich. 2002).  There, the court relied on *Poe v. Haydon*, 853 F.2d 418, 430 (6th Cir. 1988), a Sixth Circuit decision that acknowledged that sexual harassment can violate equal

protection rights – where the defendants' conduct and treatment of the plaintiff turned on her status as a woman. In *Poe*, the court noted that "sexual harassment does not violate the equal protection clause when the offensive conduct is not aimed at the plaintiff because of his or her gender." *Id*. at 429 n.6 (citing *Huebschen v. Dep't of Health and Social Services*, 716 F.2d 1167 (7th Cir. 1983).

Here, Plaintiff has offered testimony of several offensive behaviors and instances of unwelcome conduct by Defendant Armstrong, but nothing offered by Plaintiff shows that her status as a woman served as the basis for Defendant Armstrong's alleged behavior. Regardless, apart from relying on *Ebelt*, Plaintiff has advanced neither facts nor law sufficient to support an equal protection claim. Accordingly, Defendants are entitled to judgment as a matter of law on this aspect of her § 1983 claim.

Regarding Plaintiff's somewhat undifferentiated allegations under ELCRA, including an assertion of a hostile work environment, Plaintiff's claim requires showing the following elements:

> (1) the employee belonged to a protected group;
> (2) the employee was subjected to communication or conduct on the basis of sex;
> (3) the employee was subjected to unwelcome sexual conduct or communication;
> (4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and
> (5) respondeat superior.

*Radtke v. Everett*, 501 N.W.2d 155, 162 (Mich. 1993) (citing Mich. Comp. Laws §§ 37.2103(h) & 37.2202(1)(a) and footnote omitted). Because of the element of respondeat superior, an employer may avoid liability if it adequately investigated a complaint of a hostile work environment and took prompt and appropriate remedial action. *Chambers v. Trettco, Inc.*, 614 N.W.2d 910, 916 (Mich. 2000). This requirement presumes that an employer had notice. *Id*.

Here, Defendants do not contest Plaintiff's claim that she complained to her supervisors and then to Defendant Allen about various behaviors of Defendant Armstrong. These facts serve to establish notice. Similarly, Defendants have acknowledged Plaintiff's assertion that no remedial action was taken against Defendant Armstrong. In fact, they specifically attribute the termination of his employment contract to purported deficiencies in his job performance, rather than to an official response to Plaintiff's complaints. As to the elements of a sexual work environment claim itself, Plaintiff has demonstrated issues of fact regarding whether she was subject to unwelcome sexual communications and whether any such communications created a hostile or offensive work environment. Further, Defendant Allen and Defendant Armstrong cannot receive governmental immunity under Mich. Comp. Laws § 691.1407(2) or (5), because governmental immunity is not a defense to claims brought under ELCRA. *Manning v. Hazel Park*, 509 N.W.2d 874, 881 (Mich. Ct. App. 1993); *see also Mack v. City of Detroit*, 649 N.W.2d 47, 52 n.9 (Mich. 2002), *overruled on other grounds by Costa v. Community Medical Services, Inc.*, 716 N.W.2d 236 (Mich. 2006). Accordingly, summary judgment is not warranted on this claim.

Although the Court has granted summary judgment on the federal claim that served as the basis for federal jurisdiction under 28 U.S.C. § 1331, the Court exercised its discretion to retain the remaining state law claim under 28 U.S.C. § 1367(c)(3). The statute uses the permissive "may decline," rather than the mandatory "must decline." Although the balance of a court's considerations generally will point toward dismissing state law claims after the dismissal of federal claims on which jurisdiction is based, that determination still remains with the district court's discretion. *Musson Theatrical v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996) (citations omitted). A district court must base its decision on and turns on factors of judicial

economy, convenience, fairness, and comity. *Id.*; *see also Miller Aviation v. Milwaukee County Bd. of Supervisors*, 273 F.3d 722, 731-732 (7th Cir. 2001) (noting the importance of efficient use of judicial resources). Here, the dismissal of the federal claims follows the close of discovery in this Court. Also, the volume of cases in the state courts might delay prompt resolution of this case. *See* 16 Moore's Federal Practice § 106.66[3][a] (3d ed. 2006). Thus, this Court will exercise supplemental jurisdiction over Plaintiff's remaining state law claim.

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment [dkt #19] is **GRANTED IN PART** as to count I of Plaintiff's complaint and **DENIED IN PART** as to count II of Plaintiff's complaint.

It is further **ORDERED** that count I of Plaintiff's complaint is **DISMISSED WITH PREJUDICE**.

                                       s/Thomas L. Ludington
                                       THOMAS L. LUDINGTON
                                       United States District Judge

Dated: February 9, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 9, 2007.

                             s/Tracy A. Jacobs
                             TRACY A. JACOBS